# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LESLIE BLAKEY, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 2:21-cv-572-JDW |
| | : | |
| KEVIN PISTRO, | : | |
|     Defendant. | : | |

## MEMORANDUM

Leslie Blakey's Second Amended Complaint ("SAC") provides additional factual details about his claim but still comes up short. He has not alleged that any prison official refused him medical care, delayed the provision of medical care, or interfered with his right to medical care. He cannot pursue his remaining claims, which focus on issues other than medical care, because they are not the type of claims he can assert under the Supreme Court's decision in *Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971).

### I.  FACTUAL ALLEGATIONS

Mr. Blakey asserts that Warden Pistro ordered him to be locked in his cell at the Federal Detention Center Philadelphia for 24 hours a day during various dates in October 2020. He claims that he did nothing to warrant this action. During the lockdown, his toilet would not flush, and he had to sleep and eat near his non-operational toilet in the presence of feces and urine. He alleges he became sick and suffered from vomiting and diarrhea, but received no medical attention.

On Friday, November 13, 2020, his toilet again would not flush. He reported this to an Officer Freeman and asked for a bucket of water to use to manually get the

toilet to flush and clean up feces and urine on the cell floor. Officer Freeman refused. On November 14, 2020, Mr. Blakey suffered diarrhea, and he could not stop vomiting. On November 15, 2020, Mr. Blakey told Officer Leroy about his symptoms and asked Officer Leroy to contact the medical unit. Officer Leroy apparently did so because the medical unit "responded that they would send someone but no medical staff came [that day]." (ECF No. 12 at 4.) Medical staff failed to respond the next day, as well. On November 17, 2020, Mr. Blakey's toilet "flushed by itself. It turns out that all they had to do was push one button to get the toilet to flush." (*Id.*) He also saw a doctor that day and received medication for diarrhea and Tylenol. (*Id.*)

On November 9, 2020, prior to the toilet issue, an inmate housed in Mr. Blakey's unit tested positive for COVID-19. Rather than isolate the inmate, Defendant Pistro locked down the entire unit. However, prisoners in the unit were still using the same showers and phones, and both Mr. Blakey and his cellmate tested positive for COVID-19. Mr. Blakey alleges that Warden Pistro and Officers Freeman and Leroy failed to follow CDC guidelines, failed to take precautionary measures, and ignored him. He also alleges that Warden Pistro was negligent in following Bureau of Prisons guidelines and was deceitful in ordering the lockdown due to plumbing problems when the actual reason was a lack of adequate staff.

Mr. Blakey asserts that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment arising from his cell conditions, his contracting COVID-19, and the lockdown. He seeks money damages for anxiety and depression and pain from contracting COVID-19.

2

## II. STANDARD OF REVIEW

Because the Court granted Blakey leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the SAC if it fails to state a claim. The standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) applies to determine whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). That standard requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* Because Mr. Blakey is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). If the Court dismisses a complaint, it should offer an opportunity for a curative amendment "unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

## III. DISCUSSION

### A. Denial Of Medical Care

The United States Supreme Court has allowed *Bivens* claims against federal prison officials in the context of an allegation of deliberate indifference to a serious medical claim. *See Blakey v. Pistro*, No. 21-cv-572, 2021 WL 1721579, at *2 (E.D. Pa. Apr. 29, 2021) (citing *Carlson v. Green*, 446 U.S. 14 (1980)). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). "A medical need is serious . . . if it is one that has been diagnosed by a physician as

3

requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quote omitted).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To satisfy the deliberate indifference requirement, a plaintiff must allege facts to show that "the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

The only defendant that Mr. Blakey alleges was involved in his request for medical care was Officer Leroy. Mr. Blakey complained to Officer Leroy about diarrhea and vomiting and requested medical care. It appears that Officer Leroy contacted the medical unit because the medical unit responded to the request. Mr. Blakey does not allege that Officer Leroy delayed making the request or had any role in the medical unit's response (including the timeliness of that response). Thus, even assuming that Mr. Blakey's diarrhea and vomiting constituted serious medical needs, he has not stated a claim for denial of medical care. Nor does it appear that he could cure the flaws, given the facts he has asserted. The Court will therefore dismiss his claims for denial of medical care with prejudice.

## B. Conditions Of Confinement

Since *Bivens* was decided in 1971, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017). Expanding *Bivens* as a cause of action is "a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), A court must engage in a "rigorous inquiry before implying a *Bivens* cause of action in a new context or against a new category of defendants." *Vanderklok*, 868 F.3d at 200. The Supreme Court has provided a two-step analysis to determine whether to imply a *Bivens* cause of action in a new context.

First, a court must determine whether the case presents a new context for a *Bivens* claim. "[I]f the case is different in a meaningful way to previous *Bivens* cases by [the Supreme] Court, then the context is new." *Abbasi*, 137 S. Ct. at 1859. "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary in to the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1860.

Second, if the claim presents a new *Bivens* context, the court must then ask whether "special factors counsel hesitation in expanding *Bivens*." *Mack v. Yost*, 968

5

F.3d 311, 320 (3d Cir. 2020); *see also Abbasi*, 137 S. Ct. at 1857. This inquiry must "concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 173 S. Ct. at 1857-58. To be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative. *See id.* One factor is whether "any alternative, existing process for protecting the injured party's interest that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* at 1858 (cleaned up). Separation of powers concerns are another "particularly weighty" factor. *Mammana v. Barben*, No. 20-cv-2365, 2021 WL 2026847, at *4 (3d Cir. May 21, 2021). When performing the special-factors analysis, courts must consider "'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Abbasi*, 137 S. Ct. at 1857-58. "The answer most often will be Congress [because] [w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the law rather than those who interpret them." *Id.* (citation omitted).

Mr. Blakey's non-medical Eighth Amendment claim is meaningfully different from claims that the Supreme Court has recognized. Because no Supreme Court decision has ever extended *Bivens* to encompass the situations that Blakey's claim presents, his claim presents new *Bivens* contexts. *Accord Hanson v. United States*, Civ. A. No. 18-cv-17, 2018 WL 5046067, at *2 (E.D. Ky. Oct. 17, 2018) (claim based on denial of access to toilet was sufficiently distinct from all three of these prior contexts, and, therefore, was a "new context" for purposes of a *Bivens* analysis).

6

The Court must therefore consider whether special factors counsel against expanding *Bivens*. They do. As a starter, the Prison Litigation Reform Act covers the type of complaints that Mr. Blakey asserts and demonstrates Congress's preference that prisoners present them through administrative processes. *See* 42 U.S.C. § 1997e. Congress's enactment of the PLRA provides a strong indication "that Congress does not want a *Bivens* remedy in this context." *Gonzalez v. Hasty*, 269 F.Supp.3d 45, 61 (E.D.N.Y. 2017). As the Supreme Court has explained, the PLRA does not provide for a standalone damages remedy against federal jailers. *See Abbasi*, 137 S.Ct. at 1865. At least one Court of Appeals has declined to extend *Bivens* to a claim asserting unsanitary cell conditions for this reason. *See Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir. 2019) (claim based on nonfunctioning toilet not viable under *Bivens*). The Third Circuit also recently declined to extend *Bivens* remedies to a non-medical Eighth Amendment claim citing, in part, the PLRA. *See Mammana*, 2021 WL 2026847, at *4.

Separately, extending *Bivens* to a claim concerning the need to lockdown a penal facility during a worldwide pandemic – also not a recognized extension of *Bivens* – would substantially affect government operations and unduly burden federal correctional officials who must defend against such a suit in their personal capacities. *See Railey v. Ebbert*, 407 F. Supp. 3d 510, 523 (M.D. Pa. 2019) ("Furthermore, 'the judicial restraint exercised in cases implicating the administration of prisons' is another factor weighing against extension of the *Bivens* remedy."); *see also Mammana*, 2021 WL 2026847, at *4 ("Recognizing such a broad new category of claims [implicating prison administration] would step well

7

into the lawmaking privilege delegated only to Congress, and well over the bounds of our limited constitutional power."). Thus, the Court will not imply a *Bivens* remedy for Mr. Blakey's claims. Because Mr. Blakey cannot cure these issues with an amended pleading, the Court will dismiss these claims with prejudice.

## IV.  CONCLUSION

Mr. Blakey has provided additional details about his claims, but he has not shown them to be plausible. Nor can he fix them, so the Court will dismiss them with prejudice. An appropriate Order follows.

                                          **BY THE COURT:**

                                  */s/ Joshua D. Wolson*
                                  **JOSHUA D. WOLSON, J.**

June 7, 2021